UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARA TAMARA SIMMONS,

                                          Plaintiff,

                                                                                                Case # 18-CV-1462-FPG

v.

                                                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

## INTRODUCTION

Plaintiff Sara Tamara Simmons brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1; ECF No. 12-1 at 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 14. For the reasons that follow, the Commissioner's motion is GRANTED and Simmons's motion is DENIED.

## BACKGROUND

In November 2014, Simmons applied for SSI under Title XVI of the Act with the Social Security Administration (the "SSA"). Tr.[1] 10, 141. She alleged disability due to borderline intellectual functioning, a learning disability, depression, and anxiety. Tr. 10, 304. In July 2017, Simmons and a vocational expert ("VE") appeared at a hearing before Administrative Law Judge Paul Georger ("the ALJ"). Tr. 10, 18. On September 28, 2017, the ALJ issued a decision finding

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

that Simmons was not disabled. Tr. 10–18. On October 12, 2018, the Appeals Council denied Simmons's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Simmons's claim for benefits using the process described above. At step one, the ALJ found that Simmons had not engaged in any substantial gainful activity since her

application date. Tr. 12. At step two, the ALJ found that Simmons had three severe impairments: borderline intellectual functioning, major depressive disorder, and anxiety. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Simmons had the RFC to perform work at all exertional levels with specific limitations. Tr. 14–17. Specifically, the ALJ found that Simmons could frequently: work at unprotected heights; work with moving mechanical parts; operate a motor vehicle; and interact with supervisors, co-workers, and the public. Tr. 14. The ALJ further found that Simmons was limited to simple work-related decisions and simple, routine, and repetitive tasks. *Id.* At steps four and five, the ALJ found that Simmons did not have past relevant work but that there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 17. The ALJ therefore found that Simmons had not been disabled from November 25, 2014 through the date of his decision. Tr. 18.

## II. Analysis

Simmons argues that the ALJ's RFC determination was not supported by substantial evidence and makes three related arguments that that the ALJ cherry-picked evidence, did not present an appropriate hypothetical to the VE, and improperly discounted the testimony of Simmons and her mother. ECF No. 12-1 at 17–24. The Court addresses each argument below.

### A. *RFC Determination*

Simmons argues that the ALJ failed to account for her depression, anxiety, and mental limitations in his RFC determination. ECF No. 12-1 at 17–20. The Court disagrees.

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). ALJs "weigh all of the

4

evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

The relevant evidence in this case consists of one medical opinion; treatment notes by nurses and mental health counselors regarding mental health treatment Simmons received through Child and Family Services; documents from several organizations describing Simmons's attempts to develop the necessary skills to join the workforce and attempt at employment with Goodwill Industries of Western New York; and the hearing testimony.

Although most of the evidence is mixed in that portions support a more restrictive RFC and other portions do not, the relevant medical opinion clearly supports the ALJ's RFC determination. Michael P. Santa Maria, Ph.D., diagnosed Simmons with nonverbal learning disorder, borderline intellectual functioning, major depressive disorder (mild), and a history of very low birth weight. Tr. 308–16. Dr. Santa Maria opined that Simmons "demonstrate[d] adequate capacity to handle part time or full time entry-level competitive employment so long as she has a job of a relatively routine and repetitive nature with relatively limited demands on reading and writing and very limited demands on basic mathematics or problem solving or memory for new information." Tr. 316.[2]

The ALJ's RFC assessment is further supported by other portions of the record. Child and Family Services' treatment notes reflect mild symptoms and periods of improvement with medication. *See* Tr. 420, 421, 428, 430, 439–41, 463, 468, 475, 500, 503–05, 528, 597, 603, 606,

---

[2] Simmons criticizes the ALJ's reliance on Dr. Santa Maria's conclusions because he also noted that Simmons "might best transition to . . . such positions with the assistance of a job coach, particularly given that cognitive weaknesses include a consistent weakness in the ability to learn and remember new information." Tr. 316. Finding that Simmons *might* best transition to competitive employment with the assistance of a job coach, however, is entirely consistent with the ALJ's conclusion that Simmons could perform such work if limited to simple work-related decisions and simple, routine, and repetitive tasks. Tr. 14.

609, 636. Further, Simmons's course of treatment for her mental impairments has been conservative; there is no record that Simmons had inpatient mental health treatment, and it appears that she and her mother have previously declined outpatient mental health services. Tr. 310, 328, 390.

There is certainly evidence weighing against the ALJ's RFC determination. Simmons relies upon her mother for care. Tr. 71. As of the hearing, Simmons had never held competitive employment, despite robust efforts to do so. Tr. 34–35, 230–96, 650–52. Her counseling notes are replete with references to difficulty managing her anxiety and depression. *E.g.*, Tr. 639–43. Certain records suggest that Simmons is not capable of working outside of a "supported employment" environment, *see, e.g.*, Tr. 247, which the VE testified would render her unemployable in "competitive" employment, Tr. 64.

Simmons also extensively cites the records of vocational organizations that attempted to assist her in obtaining employment, ECF Nos. 12-1, 15; Tr. 230–96, but those records can be read as suggesting that Simmons is capable of engaging in substantial gainful activity with further development or vocational training. *See, e.g.*, Tr. 271–73. (noting that Simmons was "commended for her good overall performance" in her "first work experience"). Goodwill Industries of Western New York completed a diagnostic vocational evaluation, which reflects some deficiencies but also an overall capacity to engage in various types of employment. Tr. 317–25. She attempted to work for Goodwill for about a month. Tr. 35. Although Goodwill ultimately determined she was not currently suitable for their employ, the position "involve[d] a high degree of judgment . . . , comfort in interacting with strangers, and day to day task retention." Tr. 272. Accordingly, her position at Goodwill required her to exceed the functional limitations found by the ALJ and thus does not necessarily demonstrate that she is incapable of working in a position that complies with those

6

limitations, particularly with additional vocational training. *Cf. Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (finding that medical reports that consistently stated that claimant "was not disabled from all work, but rather would be an excellent candidate for *vocational rehabilitation*[] and capable of performing lighter work" supported the ALJ's determination that claimant was not disabled (emphasis added)); *Felix v. Astrue*, No. 11-CV-925, 2012 WL 424381, at *3 (C.D. Cal. Feb. 9, 2012) ("Plaintiff would apparently have this Court find that any individual worker who might take more than thirty days to learn an unskilled job would be precluded from doing unskilled work. The Court has been unable to find any authority supporting this proposition . . . .").

Even if the evidence cited by Simmons substantially supports her position that she is disabled, the Court's task here is to decide whether substantial evidence supports the ALJ's decision, not Simmons's contrary position. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). It was up to the ALJ to resolve and weigh conflicting evidence. Simmons has identified evidence that conflicts with the ALJ's RFC determination but has failed to show that the ALJ's determination was not supported by substantial evidence. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). For the foregoing reasons, the ALJ's RFC determination was supported by substantial evidence.

  B. *Cherry-Picking Evidence*

Simmons cites *Starzynski v. Colvin* for the proposition that it is "improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant." No. 15-CV-940, 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2015). The ALJ, however, was not obligated to "reconcile explicitly every conflicting shred" of evidence. *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983).

Here, Simmons claims that the ALJ improperly cherry-picked portions of the Child and Family Services treatment records that supported his RFC analysis while ignoring unfavorable portions, particularly the assessment of Katherine Hage, a nurse practitioner. ECF No. 12-1 at 17–18; ECF No. 15 at 3–4; Tr. 643. The ALJ explicitly acknowledged, however, that the "treatment records support a history of anxiety and frustration." Tr. 15. The ALJ's analysis of the treatment records does not constitute cherry-picking. *See Matta*, 508 F. App'x at 56–57 (holding that ALJ did not engage in cherry-picking where there was evidence that claimant had severely fluctuating symptoms but substantial evidence supported ALJ's conclusion that claimant could work with proper treatment).

Simmons further points to Ms. Hage's "Initial Psychiatric Evaluation," which states that Simmons's "[j]udgment is poor" and "she is unable to manage life responsibilities independently." Tr. 639–43. The ALJ did not explicitly discuss Ms. Hage's evaluation. Tr. 14–17. Even if the Court accepts that this were error, *Wahler v. Colvin*, No. 11-CV-1096, 2014 WL 6390320, at *10 (W.D.N.Y. Nov. 17, 2014) ("It was error for the ALJ to reject ARNP McCool's opinion simply because it was the opinion of a nurse practitioner."), any such error would be harmless, *Brown v. Colvin*, No. 13-CV-356, 2014 WL 1679761, at *5 (W.D.N.Y. Apr. 28, 2014) (finding that ALJ's failure to consider and weigh a nurse practitioner's opinion was harmless error where it was consistent with RFC determination and did not state functional limitations).

Ms. Hage's opinion echoes the testimony of Simmons's mother, who testified that Simmons could not live independently. Tr. 16, 51–60. The ALJ considered and rejected that opinion based on the evidence discussed above and the opinion of Dr. Santa Maria, to which the ALJ assigned "great weight." Tr. 16. Accordingly, although not explicitly stated by the ALJ, there is a reasoned basis upon which he could have rejected Ms. Hage's conclusion, stated in her initial

assessment of Simmons,[3] that the ALJ discussed in his decision. Although the ALJ certainly could have been more explicit in his discussion of the Child and Family Services records that did not support his opinion, the Court does not fault the ALJ for failing to "reconcile explicitly every conflicting shred" of evidence. *Fiorello*, 725 F.2d at 176; *see also Wider v. Colvin*, 245 F. Supp. 3d 381, 388–89 (E.D.N.Y. 2017) (holding that an ALJ is not obligated to give a nurse practitioner's opinion any weight).

## C. Step Five Determination

Simmons argues that the ALJ's step five determination was not supported by substantial evidence. ECF No. 12-1 at 20–22. Simmons claims that the ALJ erred in posing a hypothetical to the VE that did not include limitations for work in supported employment or with the assistance of a job coach. *Id.* "A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability." *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 220 (W.D.N.Y. 2014). Accordingly, if an ALJ's RFC assessment is incomplete and an ALJ's hypothetical is based upon that RFC, then the ALJ's hypothetical will often fail to account for the full spectrum of a claimant's limitations and the VE's response will not constitute substantial evidence to support the ALJ's finding. *Id.*

Here, however, the ALJ asked the VE to assume that Simmons would have limitations consistent with the ALJ's RFC determination, which was supported by substantial evidence. Tr. 14, 62. Accordingly, Simmons has failed to show error in the ALJ's step five determination. *Potter v. Colvin*, No. 15-CV-6337, 2016 WL 5468108, at *4 (W.D.N.Y. Sept. 29, 2016) (holding that it

---

[3] Also as discussed by the ALJ, Tr. 15–16, Ms. Hage noted improvements in Simmons's condition with medication and treatment. For instance, less than a month after her initial assessment, Ms. Hage noted that Simmons's "mother report[ed] . . . a 'significant difference' in her attitude, irritability[,] and even communication skills." Tr. 472.

was not error for ALJ to rely on VE's response to hypothetical where hypothetical accurately reflected claimant's impairments supported by medical evidence).

> D.    *Credibility Assessments*

Simmons argues that the ALJ improperly discounted her credibility and the credibility of her mother. ECF No. 12-1 at 22–24. The Court disagrees.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the [limitations] alleged by the claimant." *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (internal quotation marks omitted); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (internal citations omitted)). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Baker ex rel. Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *5 (W.D.N.Y. Mar. 6, 2018) (internal quotation marks omitted).

Simmons argument here is simply a repackaged version of her argument regarding the ALJ's RFC determination. Although portions of her and her mother's testimony support more restrictions than those found in the ALJ's RFC determination, Simmons has not shown that it was error for the ALJ to explicitly consider and reject her and her mother's testimony to the extent it conflicted with Dr. Santa Maria's opinion and the other evidence that supports his RFC

determination. *See Quintana v. Colvin*, No. 15-CV-6473, 2017 WL 752187, at *18–20 (S.D.N.Y. Feb. 27, 2017) (rejecting claimant's challenge to ALJ's credibility determination where ALJ's decision was supported by substantial evidence); *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 152 (N.D.N.Y. 2012) ("After considering . . . subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject . . . subjective testimony.").[4]

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 14, is GRANTED and Simmons's Motion for Judgment on the Pleadings, ECF No. 12, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 10, 2020
      Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court

---

[4] Simmons makes a related argument that the ALJ improperly relied upon her testimony that "she helps with household chores, including sweeping, cleaning bathrooms and washing dishes, and spends time with relatives." ECF No. 12-1 at 23 (quoting Tr. 16–17). Even assuming this were error, substantial evidence, such as Dr. Santa Maria's opinion, still supports the ALJ's RFC determination and thus the error would not be a proper basis for reversal. *See Polidoro v. Apfel*, No. 98-CV-2071, 1999 WL 203350, at *8–9 (S.D.N.Y. Apr. 12, 1999) ("[T]he ALJ's treatment of [claimant]'s subjective statements of pain [based on routine activities] does not provide a basis for reversal because there is substantial evidence in the record to support the conclusion that plaintiff's pain was not so severe as to preclude gainful employment.").